53 Cal.Rptr.3d 104 (2006)
146 Cal.App.4th 327
The PEOPLE, Plaintiff and Respondent,
v.
Silvestre Garcia GONZALEZ et al., Defendants and Appellants.
No. C045935.
Court of Appeal of California, Third District.
December 29, 2006.
*105 Hilda Scheib, under appointment by the Court of Appeal, For Defendants and Appellants.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Senior Assistant Attorney General, Stephen G. Herndon and David Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION ON REHEARING
MORRISON, J.
Defendants Luis Lopez Arriaga and Silvestre Garcia Gonzalez were convicted of attempted murder of William Hunt, and the jury found that the crime was willful, premeditated, and deliberate (Pen.Code, §§ 187, 664; further section references are to the Penal Code unless otherwise specified). The jury also found that Arriaga personally used, personally discharged, and caused great bodily injury with a firearm (§§ 12022.5, subd. (a)(1); 12022.53, subds. (a)-(d)), and that Gonzalez was armed with a firearm (§ 12022.5 subd. (a)(1)). On defendants' previous appeal, we reversed the convictions and special findings of both defendants for attempted murder of Matthew Hunt, vacated the sentences and remanded for resentencing.
On resentencing, Arriaga was sentenced to state prison for life with the possibility of parole, plus 25 years to life for the firearm enhancement, the terms to run consecutively. Gonzalez was sentenced to prison for life with the possibility of parole, plus one year for the armed enhancement, the terms to run consecutively.
On appeal, defendants raise several claims of error. We shall order a correction to defendant Gonzalez's abstract and affirm the judgments.

*106 FACTS[1]
While deer hunting in October 2000 with his eight-year-old son, Matthew, and four-year-old son, Riley, William Hunt heard a shot and was hit in the left wrist and arm by a shotgun blast.[2] As he turned to look for the boys, he heard a second shot and was struck in the midsection. He then saw that Matthew had been shot in the forehead and face and was lying prone on the ground.
Shortly after the shots were fired, defendant Arriaga and his son, Mario Lopez, came down the hill. Arriaga was carrying a shotgun and looked angry. Lopez appeared upset. The men helped William and the boys down the hill to William's truck. William, an emergency medical technician, was able to provide preliminary care to himself and Matthew. He then got into his truck and began honking the horn. William's brother, Donald, who was hunting in a nearby area, heard the horn and responded. Donald drove the truck out to the highway, where they came upon a forest service crew. The crew provided first aid while emergency transportation was arranged. Both victims survived.
The mountain property on which the Hunts were hunting is a large parcel known as the Davis property. It is held in a trust established for the benefit of the trustors' grandchildren. William and Donald are among those grandchildren. The Hunts also have access to a contiguous parcel, known as the Bacchi property, owned by relatives of the Hunts.
Defendant Gonzalez, who was married to a sister of William and Donald Hunt, had spent time on the properties with his wife. An investigation revealed that Gonzalez used the properties for the surreptitious cultivation of large amounts of marijuana. About one month before the shootings, law enforcement agents had found and destroyed three large gardens on the Bacchi property. It is apparent, however, that they did not discover and eradicate all of the marijuana being grown in the area.
Defendant Arriaga's son, Mario Lopez, testified that during the summer before the shootings, Gonzalez hired Arriaga to stay on the property in order to tend and guard the marijuana gardens. Gonzalez gave Arriaga a shotgun and told him to shoot anyone that came near the marijuana. (Lopez attempted to describe the comment as a joke and said that Gonzalez had been drinking at the time.) Another of Arriaga's sons, Arturo Lopez, testified that he heard Gonzalez tell other workers to shoot anyone who came near the marijuana.
From time to time, Mario would give Gonzalez a ride to the property. On a couple of occasions, Mario took his sons there to fish in the lake. Mario and his sons went to the property on the day of the shootings.[3] As Mario approached the area where Arriaga was, he heard a gunshot and then, seconds later, heard another. He ran to where the shots came from and saw William, wounded and sitting on a log. He saw Arriaga nearby with a shotgun. Mario told Arriaga to drop the gun *107 and, at Mario's direction, they helped the victims.
After the shootings, both defendants fled from the region. Gonzalez ultimately was located and arrested in Rohnert Park, Sonoma County. Arriaga was located and arrested in Sunnyvale, Santa Clara County

DISCUSSION

I[**]

II

Imposition of Firearm Enhancements
In sentencing defendant Arriaga, the trial court imposed the firearm enhancement pursuant to section 12022.53, subdivision (d), and imposed but stayed the firearm enhancements found true under sections 12022.5, subdivision (a)(1), and 12022.53, subdivisions (b) and (c). Arriaga contends the additional firearm enhancements must be stricken, not stayed.[6] Although the trial court also stayed the additional firearm enhancements when it originally sentenced Arriaga, Arriaga is not prevented from raising this issue for the first time in this appeal.
The trial court acts in excess of its jurisdiction and imposes an unauthorized sentence when it erroneously stays or fails to stay execution of a sentence or fails to impose or strike an enhancement. (People v. Scott (1994) 9 Cal.4th 331, 354, fn. 17, 36 Cal.Rptr.2d 627, 885 P.2d 1040; People v. Bradley (1998) 64 Cal.App.4th 386, 391, 75 Cal.Rptr.2d 244.) An unauthorized sentence involving pure questions of law is reviewable at anytime. (People v. Smith (2001) 24 Cal.4th 849, 852-854, 102 Cal.Rptr.2d 731, 14 P.3d 942.) Thus, we address whether the trial court erroneously imposed and stayed punishment on the additional firearm enhancements.
Relying upon section 12022.53, subdivision (f), Arriaga contends the sections 12022.5, subdivision (a)(1), and 12022.53, subdivisions (b) and (c), enhancements must be stricken. We agree that these findings must be stricken.
Under section 12022.53, subdivision (f), "[o]nly one additional term of imprisonment under this section shall be imposed per person for each crime. If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment. An enhancement involving a firearm specified in Section ... 12022.5, ... shall not be imposed on a person in addition to an enhancement imposed pursuant to this section."[7]
The People acknowledge section 12022.53, subdivision (f), but argue in a petition for rehearing that the court must apply California Rule of Court, rule 4.447, which requires that enhancements prohibited by law be imposed and stayed rather than stricken. As pointed out by Justice *108 Robie in his dissent, the rules promulgated by the Judicial Council cannot override the governing statute. (See Hess v. Ford Motor Co. (2002) 27 Cal.4th 516, 532, 117 Cal.Rptr.2d 220, 41 P.3d 46.) The language of section 12022.53, subdivision (f), takes precedence over rule 4.447. "An enhancement involving a firearm specified in Section ... 12022.5 ... shall not be imposed on a person in addition to an enhancement imposed pursuant to this section." (§ 12022.53, subd. (f), italics added.) The Advisory Committee Comment to rule 4.447 expressly recognized this limitation on the application of the rule, specifically citing section 12022.53, subdivision (f): "Statutory restrictions may prohibit or limit the imposition of an enhancement in certain situations. (See, for example, section[] ... 12022.53(e)(2) and (f), ...)"
Nor does section 12022.53, subdivision (h), require the order imposing the additional enhancements be reversed or vacated, returning such enhancements to nonimposed status.[8] Section 12022.53, subdivision (h), provides: "Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section."
The statutory scheme clearly intends that when multiple enhancements are found true, only the enhancement with the longest term of imprisonment should be imposed. The question is, what is to be done with the lesser enhancement findings?
The People formerly contended and the dissent agrees that subdivision (f) prevents the imposition of punishment on the lesser enhancements and subdivision (h) prevents the court from striking the lesser enhancement findings. Thus, they conclude the only remaining alternative is to not sentence on those enhancements, essentially suspending imposition of sentence. Yet, it is the duty of the court to pass sentence on the defendant and impose the prescribed punishment. (§ 12; People v. Cheffen (1969) 2 Cal.App.3d 638, 641, 82 Cal.Rptr. 658.) "Pursuant to this duty the court must either sentence the defendant or grant probation in a lawful manner; it has no other discretion." (Ibid.) Thus, the failure to pronounce sentence on all counts and enhancements, as proposed by the People, would result in an unauthorized sentence. (People v. Price (1986) 184 Cal. App.3d 1405, 1411, fn. 6, 229 Cal.Rptr. 550.) Moreover, simply not dealing with the lesser enhancements in any manner would cause unnecessary and disruptive uncertainty in the trial court and Department of Corrections and Rehabilitation. Neither entity would know what to do with these unprecedented "lurking" enhancements.
In People v. Bracamonte (2003) 106 Cal. App.4th 704, 131 Cal.Rptr.2d 334, the Court of Appeal, Second Appellate District, Division Four attempted to harmonize subdivisions (f) and (h) by concluding that "the plain and clear language that a section 12022.5 firearm use enhancement `shall not be imposed ... in addition to an enhancement imposed pursuant to .... section [12022.53]'" is mandatory and, therefore, a section 12022.5 enhancement must be stricken when the greater section 12022.53 enhancement is imposed. (Bracamonte, supra, at pp. 711-713, 131 Cal. Rptr.2d 334.) With respect to the lesser section 12022.53, subdivisions (b) and (c), *109 enhancements, Bracamonte reached a different conclusion. Construing section 12022.53, subdivision (h), as expressly prohibiting the court from striking the lesser enhancements and conflicting with subdivision (f), the court concluded that "section 12022.53 operates to require the trial court to add the applicable enhancement for each firearm discharge and use allegation under that section found true and then to stay the execution of all such enhancements except for the one which provides the longest imprisonment term." (Bracamonte, supra, at p. 713, 131 Cal.Rptr.2d 334.)
We disagree with Bracamonte's conclusion that the lesser section 12022.53 enhancements should be imposed and then stayed. Section 12022.53, subdivision (f), expressly states that only the greatest enhancement may be imposed, making no exception to this prohibition for enhancements thereafter stayed. Nor does the trial court otherwise have any authority to stay the lesser enhancements. Unless a statute provides otherwise, an enhancement may be imposed or stricken, but it may not be stayed; to do so is an illegal sentence. (People v. Harvey (1991) 233 Cal.App.3d 1206, 1231, 285 Cal.Rptr. 158; People v. Cattaneo (1990) 217 Cal.App.3d 1577, 1588-1589, 266 Cal.Rptr. 710.) Moreover, we do not interpret section 12022.53, subdivision (h), as prohibiting the striking of lesser included enhancement findings that are rendered superfluous by the required imposition of the greater enhancement in the same statutory provision.
"`The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]'" (People v. Thomas (1992) 4 Cal.4th 206, 210, 14 Cal.Rptr.2d 174, 841 P.2d 159.) We do not, however, construe statutes in isolation, but rather, read every statute "'"with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]'" (Ibid.) The provisions must be "construed according to the fair import of their terms, with a view to effect its objects and to promote justice." (§ 4.)
Section 12022.53, subdivision (a), begins by setting forth the felonies to which the section applies. Subdivisions (b), (c) and (d) then specify the applicable enhancements for firearm use and discharge in the commission of the enumerated felonies. Subdivision (e) discusses the applicability of the enhancements to principals and participation in street gangs. Subdivision (f) then states that only one enhancement under section 12022.53 may be imposed and that it must be the one providing for the longest period of imprisonment. It also provides, as set forth herein, that an enhancement under section 12022.5 may not be imposed in addition to the section 12022.53 enhancement.
Subdivision (g) then follows by providing that, "[n]otwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person found to come within the provisions of this section." It is in this context that subdivision (h) follows and provides that "[notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section."
Read in context, considering its placement within the section, and using common sense construction, we conclude that subdivision (h) prohibits the court from exercising discretion to strike an allegation or finding under section 12022.53. It is not meant to prohibit the court from striking a superfluous lesser enhancement under this *110 same section. By its plain language, subdivision (h) prohibits striking the enhancement or finding "[notwithstanding Section 1385 or any other provision of law[.]" (Italics added.) The statute does not prohibit the striking of the finding in accordance with this provision of law.
Applying the doctrine of ejusdem generis to section 12022.53, subdivision (h), supports this statutory construction. Ejusdem generis (literally, "'of the same kind'") (Engelmann v. State Bd. of Education (1991) 2 Cal.App.4th 47, 56, fn. 11, 3 Cal.Rptr.2d 264), provides that where general words follow specific words, or specific words follow general words in a statutory enumeration, the general words are construed to embrace only things similar in nature to those enumerated by the specific words. (2A Sutherland, Statutory Construction (6th Ed.2000) Intrinsic Aids, § 47.17, pp. 272-274; Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1160, 278 Cal.Rptr. 614, 805 P.2d 873.)
Subdivision (h) specifically identifies section 1385, the provision permitting the trial court to strike or dismiss an enhancement or punishment in furtherance of justice, prior to the language "or any other provision of law." The specific inclusion of section 1385 indicates the Legislature intended by subdivision (h) to prevent the trial court from exercising its discretion to dismiss or strike the enhancement, not to prevent the trial court from properly sentencing under this section. The Legislature has been expressly warned by the California Supreme Court that the trial court's discretion to strike charges, findings and enhancements pursuant to section 1385 remains intact "in the absence of a specific indication by the Legislature to the contrary." (People v. Williams (1981) 30 Cal.3d 470, 483, 179 Cal.Rptr. 443, 637 P.2d 1029; see also People v. Superior Court (1968) 69 Cal.2d 491, 502, 72 Cal. Rptr. 330, 446 P.2d 138 ["the discretion of the judge [under section 1385] is absolute except where the Legislature has specifically curtailed it"].)
Our interpretation of the statute is also supported by the later amendment to section 12022.5 to include the exact same language in subdivision (c) that "[n]otwithstanding Section 1385 or any other provisions of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section." Statutes 2002, chapter 126, section 13 provides, that "[t]he amendments to subdivision (c) of section 12022.5 of the Penal Code, in section 3 of this act, to prohibit striking the enhancement, are intended to be declaratory of existing law as contained in People v. Thomas (1992) 4 Cal.4th 206, 14 Cal.Rptr.2d 174, 841 P.2d 159, and People v. Ledesma (1997) 16 Cal.4th 90, 65 Cal. Rptr.2d 610, 939 P.2d 1310." Thomas held that the trial court does not have discretion pursuant to section 1385 to strike the firearm use enhancement under section 12022.5. (People v. Thomas, supra, 4 Cal.4th at p. 213, 14 Cal.Rptr.2d 174, 841 P.2d 159.) Ledesma held that section 12022.5 is mandatory and does not by its terms grant the trial court discretion whether or not to impose the enhancement. (People v. Ledesma, supra, 16 Cal.4th at pp. 94-95, 97-98, 65 Cal. Rptr.2d 610, 939 P.2d 1310.)
We do not consider the striking of the lesser included enhancements in accordance with subdivision (f), which provides that only the enhancement providing for the longest period of imprisonment may be imposed, to be groundbreaking. A defendant cannot stand convicted of both a greater and a lesser included offense. (People v. Ortega (1998) 19 Cal.4th 686, 692, 80 Cal.Rptr.2d 489, 968 P.2d 48; People *111 v. Pearson (1986) 42 Cal.3d 351, 355, 228 Cal.Rptr. 509, 721 P.2d 595.) To permit conviction of both the greater and the lesser offense would be to convict the defendant twice of the lesser offense. (People v. Ortega, supra, at p. 705, 80 Cal. Rptr.2d 489, 968 P.2d 48, citing People v. Fields (1996) 13 Cal.4th 289, 306, 52 Cal. Rptr.2d 282, 914 P.2d 832.) When a jury finds a defendant guilty of both the greater and lesser included offense, the defendant is punished for the greater offense and the lesser included offense is stricken. (See People v. Moran (1970) 1 Cal.3d 755, 763, 83 Cal.Rptr. 411, 463 P.2d 763.) The lesser included offense is not left "in limbo," nor is it stayed. This is true even if the offense is one contained in section 1203.06offenses for which imposition or execution of sentence may not be stayed and which the trial court is not authorized to strike under section 1385. (See People v. Tanner (1979) 24 Cal.3d 514, 520, 156 Cal. Rptr. 450, 596 P.2d 328 [trial court may not strike crimes falling within section 1203.06 pursuant to section 1385].)
Finally, we agree with the court in Bracamonte that, if a lesser enhancement is stricken and the greater enhancement is later reversed on appeal, the lesser enhancement "would be revived by operation of law." (Bracamonte, supra, 106 Cal. App.4th at p. 713, fn. 5, 131 Cal.Rptr.2d 334.) When we reverse on appeal a greater enhancement on grounds not applicable to a lesser enhancement, we can reinstate the lesser enhancement findings. (See § 1260.) Likewise, when a greater enhancement is invalidated in a state habeas corpus proceeding, the habeas court may reinstate the lesser enhancement findings. (See §§ 1484, 1489; In re Bower (1985) 38 Cal.3d 865, 880, 215 Cal.Rptr. 267, 700 P.2d 1269.) This procedure is already used in the analogous situation of lesser included offenses for which a defendant cannot stand convicted despite a guilty verdict. Thus, striking the findings rather than staying punishment on the lesser enhancements does not prejudice the People.

III-IV[***]

DISPOSITION
The trial court is directed to prepare a corrected abstract of judgment reflecting defendant Gonzalez's sentence of life with the possibility of parole on the attempted murder conviction. The trial court is further directed to prepare an amended abstract of judgment striking defendant Arriaga's findings and vacating the sentences on the sections 12022.5 and 12022.53, subdivisions (b) and (c) enhancements. As so modified, the judgments are affirmed. The trial court is directed to forward certified copies of the corrected and amended abstracts of judgment to the Department of Corrections and Rehabilitation.
I concur: BLEASE, Acting P.J.
ROBIE, J., Dissenting.
With regard to part II of the Discussion of the majority opinion and the opinion's disposition, I respectfully dissent.
Before I explain why, I believe it is important to clarify the terminology of sentence enhancements. "By definition, a sentence enhancement is `an additional term of imprisonment added to the base term.'" (Robert L. v. Superior Court (2003) 30 Cal.4th 894, 898, 135 Cal.Rptr.2d 30, 69 P.3d 951, quoting Cal. Rules of Court, rule 4.405(c).) The statutes at issue herePenal Code[1] sections 12022.5 and *112 12022.53both provide various sentence enhancements for the use of a firearm in the commission or attempted commission of a crime.[2]
For these sentence enhancements to apply to a particular defendant, the requisite facts (e.g., personal use of a firearm in the commission of attempted murder) must be alleged in the information or indictment. (See § 12022.53, subd. (j); People v. Najera (1972) 8 Cal.3d 504, 509, fn. 4, 105 Cal.Rptr. 345, 503 P.2d 1353.) This is a sentence enhancement allegation.
Also for these sentence enhancements to apply, the requisite facts, as alleged, must be, admitted by the defendant or found true by the trier of fact (See § 12022.53, subd. (j); People v. Najera, supra, 8 Cal.3d at pp. 509-510, 105 Cal.Rptr. 345, 503 P.2d 1353.) The latter is a sentence enhancement finding.
Thus, we have enhancement allegations, enhancement findings, and the actual sentence enhancements.
With that understood, I turn to the issue in this case. Here, the information contained the requisite enhancement allegations and the jury made the requisite enhancement findings to impose on defendant Arriaga the various sentence enhancements provided by section 12022.5, subdivision (a) and section 12022.53, subdivisions (b), (c), and (d). As my colleagues note, the trial court imposed the 25-year-to-life sentence enhancement provided by section 12022.53, subdivision (d), and imposed but stayed the various other sentence enhancements pursuant to section 12022.5, subdivision (a), and section 12022.53, subdivisions (b) and (c). (I will refer to these various other sentence enhancements as the additional sentence enhancements.)
I agree with my colleagues that the trial court erred in imposing, then staying, the additional sentence enhancements. I do not agree, however, that the proper course is to strike those enhancements, let alone to strike the underlying enhancement findings, as my colleagues are inclined to do. I believe subdivisions (f) and (h) of section 12202.53 can be reconciled much more simply than my colleagues propose, in a way that does not contravene any other law.
As my colleagues note, subdivision (f) of section 12022.53 (section 12022.53(f)) provides in pertinent part: "Only one additional term of imprisonment under this section shall be imposed per person for each crime. If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment. An enhancement involving a firearm specified in Section ... 12022.5 ... shall not be imposed on a person in addition to an enhancement imposed pursuant to this section." Thus, section 12022.53(f) specifies what the trial court must do when (as here) the jury makes multiple enhancement findings under this section and section *113 12022.5 for a single crime. What the trial court must do is impose only one sentence enhancementthe one that provides the longest term of imprisonment regardless of how many enhancement findings the jury has made.
Section 12022.53(f) does not say what the trial court should do, if anything, about the enhancement findings. Guidance on that point, however, is found in subdivision (h) of section 12022.53 (section 12022.53(h)), which provides: "Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section."[3] (Italics added.) Thus, section 12022.53(h) tells the trial court to leave the enhancement findings alone.
Here, the jury made four enhancement findings, finding true three enhancement allegations based on section 12022.53 and one enhancement allegation based on section 12022.5. Under the first and second sentences of section 12022.53(f), the trial court was authorized to impose only one sentence enhancement based on the three section 12022.53 enhancement findings the jury madespecifically, the sentence enhancement that provided the longest term of imprisonment, which was the "additional and consecutive term of imprisonment in the state prison for 25 years to life" under subdivision (d) of section 12022.53. Having imposed that sentence enhancement on defendant, the court was then prohibited by the third sentence of section 12022.53(f) from imposing a sentence enhancement under section 12022.5.
Since the court had no authority in the first place to impose any punishment based on the two lesser section 12022.53 enhancement findings or the section 12022.5 enhancement finding, it does not matter whether the court had the authority to strike those enhancement findings under section 12022.53(h) or any other provision of law. Instead of imposing punishment based On those findings, then staying the enhancements, the court simply should have left the enhancement findings in place, but not imposed any punishment based on them. If the court had done that, then the question of whether the court could strike those enhancement findings, or stay the imposition of punishment on them, would be moot.
The majority concludes, however, that simply not imposing punishment based on the three other enhancement findings would result in an unauthorized sentence, based on section 12, People v. Cheffen (1969) 2 Cal.App.3d 638, 82 Cal.Rptr. 658 and People v. Price (1986) 184 Cal.App.3d 1405, 229 Cal.Rptr. 550. I cannot agree.
Section 12 provides: "The several sections of this code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the court authorized to pass sentence, to determine and impose the punishment prescribed." In Cheffen, the court observed that "[p]ursuant to this duty the court must either sentence the defendant or grant probation in a lawful manner; it has no other discretion." (People v. Cheffen, supra, 2 Cal. App.3d at p. 641, 82 Cal.Rptr. 658.) Unlike this case, however, Cheffen did not involve a statute that expressly directs the trial court to impose only one additional sentence enhancement based on several enhancement findings. In Cheffen, the trial court simply failed to pronounce sentence on three of the five charges of which the jury had found the defendant guilty. (Id at p. 638, 82 Cal.Rptr. 658.) Because there was no authority for the trial court *114 to refuse to impose those sentences, the appellate court properly concluded that the trial court's failure in that regard violated its duty under section 12 to "impose the punishment prescribed." That is simply not the case here, however, because section 12022.53(f) specifically directed the trial court not to impose any punishment based on three of the four enhancement findings the jury made. It is perfectly consistent with section 12 for a court in this situation not to impose any punishment based on the three other enhancement findings because the trial court's duty under section 12 is only to impose "the punishment prescribed." Under section 12022.53(f), "the punishment prescribed" here was only the punishment for the section 12022.53, subdivision (d), sentence enhancement, because that was the only punishment section 12022.53(f) authorized the trial court to impose.
Nothing in Price alters this conclusion. In Price, while sentencing the defendant, the trial court failed to mention an enhancement on one of the defendant's convictions. (People v. Price, supra, 184 Cal. App.3d at p. 1411, 229 Cal.Rptr. 550.) In a footnote, the appellate court observed that "[t]he failure to pronounce sentence on a count is an unauthorized sentence and subject to correction on remand." (Id at p. 1411, fn. 6, 229 Cal.Rptr. 550.) This is consistent with People v. Cheffen, supra, 2 Cal.App.3d 638, 82 Cal.Rptr. 658. As in Cheffen, however, there was no authority for the trial court to refuse to impose the punishment prescribed for the enhancement at issue. Here, there is such authority. Indeed, as explained above, section 12022.53(f) prohibited the trial court from imposing punishment based on the two lesser section 12022.53 sentence enhancements and the section 12022.5 sentence enhancement.
Based on the foregoing analysis, I, too, "disagree with Bracamonte's[4] conclusion that the lesser section 12022.53 enhancements should be imposed and stayed." (ante, at p. 109.) But the proper solution to the supposed dilemma is not what the majority proposes. Rather than striking the lesser enhancements and the underlying enhancement findings (in contravention of section 12022.53(h)), the trial court simply does not impose any punishment based on those enhancement findings, as directed by section 12022.53(f). This is comparable to suspending the imposition of a sentence when granting probation. (See § 1203, subd. (a).) The underlying jury finding or verdict remains in place, but no punishment is imposed at that time
I see no reason why these additional sentence enhancement findings, for which no punishment has been imposed; should cause any "disruptive uncertainty in the trial court and the Department of Corrections and Rehabilitation," as my colleagues fear, (ante, at p. 108.) Section 12022.53(f) makes clear that although there may be multiple enhancement findings under sections 12022.5 and 12022.53 for any given crime in a particular case, only one sentence enhancement (the longest one) may be imposed based on those findings. And if the statute itself were not sufficiently clear, then certainly an opinion from this court, explaining the proper operation of the statute would be sufficient to remedy any uncertainty and prevent any disruption.
This solution (leaving the lesser enhancement findings in place) also has the virtue of not requiring the lesser sentence enhancement to be "`revived by operation of law'" in the event the greater sentence enhancement is reversed on appeal, (ante, at p. 111.) If the greater sentence enhancement *115 is reversed on appeal or invalidated in a state habeas corpus proceeding, then on resentencing the trial court can simply impose sentence based on the lesser enhancement finding, which has remained in place with no punishment imposed pursuant to section 12022.53(f).
To be fair to Judge Keller, there is a rule of court that supports what he did here. Rule 4.447 of the California Rules of Court provides as follows: "No finding of an enhancement shall be stricken or dismissed because imposition of the term is either prohibited by law or exceeds limitations on the imposition of multiple enhancements. The sentencing judge shall impose sentence for the aggregate term of imprisonment computed without reference to those prohibitions and limitations, and shall thereupon stay execution of so much of the term as is prohibited or exceeds the applicable limit. The stay shall become permanent upon the defendant's service of the portion of the sentence not stayed."
Rule 4.447 tells trial courts to do exactly what Judge Keller didimpose sentence for an aggregate term of imprisonment, including any and all enhancements, without regard to any law prohibiting the imposition of one or more of those enhancements, then simply "stay execution of so much of the term as is prohibited or exceeds the applicable limit."
In my view, however, rule 4.447 is invalidat least as applied to firearm enhancements under sections 12022.5 and 12022.53. As I have explained, section 12022.53(f) expressly prohibits the imposition of multiple sentence enhancements under section 12022.53 for any given crime; it also prohibits the imposition of a firearm enhancement under section 12022.5 in conjunction with the imposition of an enhancement under section 12022.53. Where the Legislature has commanded that certain enhancements shall not be imposed, the Judicial Council has no authority to allow or require action to the contrary. (See Hess v. Ford Motor Co. (2002) 27 Cal.4th 516, 532, 117 Cal.Rptr.2d 220, 41 P.3d 46 ["Rules promulgated by the Judicial Council may not conflict with governing statutes"].)
Based on the foregoing analysis, I would reverse the judgment to the extent it imposed, then stayed, punishment on defendant Arriaga for the sections 12022.5 and 12022.53, subdivision (b) and (c), sentence enhancements. This would leave the underlying enhancement findings in place, as section 12022.53(f) contemplates and section 12022.53(h) requires.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, III and IV.
[1] The facts are taken from our previous opinion in this case, which is contained in the clerk's transcript. (People v. Arriaga (Jan. 22, 2003) C038855, 2003 WL 150049 [nonpub. opn.].)
[2] For simplicity and to avoid confusion, we hereafter will refer to the Hunts by their first names.
[3] Mario testified that Gonzalez had asked for a ride to the property on the morning of the shootings. However, when Mario arrived at Gonzalez's home, he did not appear to be there. Mario assumed that Gonzalez had gotten another ride to the property, so Mario and his sons drove there without him.
[**] See footnote *, ante.
[6] The issue of whether the multiple punishment bar of section 654 applies to sentence enhancements and, in particular to imposition of multiple enhancements for the single discharge of a firearm resulting in great bodily injury or death under section 12022.53, subdivision (d), is currently pending before the California Supreme Court in People v. Palacios, S132144, review granted May 11. 2005.
[7] Section 12022.53, subdivision (j), provides in part that "[w]hen an enhancement specified in this section has been admitted or found to be true, the court shall impose punishment pursuant to this section rather than imposing punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty or a longer term of imprisonment."
[8] The People originally made this argument in their respondent's brief. In a petition for rehearing, however, the People retreated from this position, instead adopting the position we have rejected herein that the enhancements should be imposed and stayed in accordance with California Rule of Court, rule 4.447.
[***] See footnote *, ante.
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Specifically, subdivision (a) of section 12022.5 provides a sentence enhancement of 3, 4, or 10 years for anyone who personally uses a firearm in the commission of a felony or attempted felony. Subdivision (b) of section 12202.53 provides a sentence enhancement of 10 years for anyone who personally uses a firearm in the commission of an enumerated felony (including attempted murder). Subdivision (c) of that statute provides a sentence enhancement of 20 years for any-one who personally and intentionally discharges a firearm and proximately causes great bodily injury or death to anyone other than an accomplice in the commission of one of the enumerated felonies.
[3] A similar provision now appears in subdivision (c) of section 12022.5, but that provision was not added until 2002. (Stats.2002, ch. 126, § 3, p. 4.)
[4] People v. Bracamonte (2003) 106 Cal. App.4th 704, 131 Cal.Rptr.2d 334.